# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NICHOLAS E., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-1079-ALM |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Nicholas E.[2] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 4), and the parties have fully briefed the issues (Docs. 8, 14).[3] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 6, 7). Based on

---

[1] Frank Bisignano was sworn in as the Commissioner of the Social Security Administration on May 7, 2025, and is therefore substituted as Defendant in this matter, pursuant to Federal Rule of Civil Procedure 25(d).

[2] For privacy purposes in light of the sensitive information disclosed in Social Security cases, the Court refers to Plaintiff by first name and last initial only.

[3] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

1

the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

I.  **Procedural History**

Plaintiff protectively filed an application for DIB on July 6, 2022, alleging a disability onset date of May 11, 2022. (AR, at 207-08). The SSA denied the application initially and on reconsideration. (*Id.* at 71-73, 74, 75-82, 83, 84-95). An administrative hearing was held on June 5, 2024. (*Id.* at 36-70). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 14-30). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 1-5). Thus, the ALJ's decision became the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

II.  **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence from an acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a

medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[4] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to

---

[4] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

3

the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id.* "The claimant is entitled to disability benefits only if he is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "[a]n agency decision that either applies

4

an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

### III. Administrative Decision

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 11, 2022, the alleged disability onset date. (AR, at 19). At Step Two, the ALJ found Plaintiff had the following severe impairments: essential hypertension, other disorders of the gastrointestinal system, obesity, other and unspecified arthropathies, depressive, bipolar, and related disorders, anxiety and obsessive compulsive disorders, spine disorders, and migraine headaches. (*Id.*) At Step Three, the ALJ found Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 20). The ALJ then determined Plaintiff

> has the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) except the claimant is able to perform occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds; frequently balancing; occasionally stooping[,] kneeling, crouching or crawling; and occasionally reaching overhead with the right upper extremity. The claimant is able to understand, remember and carry out simple and detailed but not complex tasks and make occasional related judgments; able to concentrate and focus for 2hr periods with routine work breaks and pace and persist for an 8hr work day and 40hr work week; able to interact with supervisors and coworkers on an occasional superficial work basis to learn tasks and accept criticism, but can only tolerate incidental/occasional public contact where frequent conversation or communication is not required; and able to adapt to a work setting and some forewarned changes the work setting[.]

(*Id.* at 23). At Step Four, the ALJ concluded Plaintiff could not perform his past relevant work. (*Id.* at 28). Then, at Step Five, the ALJ determined that when considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as housekeeper, marker, and routing

5

clerk. (*Id*. at 28-29). Thus, the ALJ found Plaintiff had not been under a disability since May 11, 2022, through the date of the decision. (*Id.* at 29).

## IV. Issue Presented for Judicial Review

Plaintiff contends the ALJ erred by failing to account for and consider his subjective reports related to migraine headaches. (Doc. 8, at 6-16). The Commissioner responds that the ALJ properly considered Plaintiff's migraine headaches, including his subjective reports of pain and limitations. (Doc. 14, at 3-13).

## V. The ALJ Did Not Properly Consider Plaintiff's Migraines When Formulating the RFC.

Plaintiff contends the ALJ failed to properly consider his migraine headaches. (Doc. 8, at 5-10). The Court agrees and finds the ALJ did not properly consider Plaintiff's alleged symptoms – both by improperly considering his daily activities and by failing to address portions of the medical record.

### A. The Legal Standard for Analyzing a Claimant's Alleged Symptoms

> The Commissioner has a two-step process for evaluating a claimant's symptoms, that is, his or her subjective statements about his or her impairments and limitations. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. at *3. If so, at the second step, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms . . . and determine[s] the extent to which [a claimant's] symptoms limit his or her ability to perform work-related activities." *Id*. at * 4. In making this evaluation, the ALJ considers the medical evidence of record, along with several factors, including the claimant's activities of daily living. *See id*. at *7.

*James v. Comm'r, SSA*, 2024 WL 1133442, at *3 (10th Cir. Mar. 15, 2024). The factors other than the medical evidence are: (1) daily activities; (2) the location, duration,

frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. *See* Social Security Ruling ("SSR") 16-3p. 2017 WL 5180304, at *7-8.

### B. Plaintiff's Alleged Migraine-Related Symptoms and the ALJ's Consideration of Them

Plaintiff testified that he has headaches on a daily basis, which mainly last one-to-three hours. (AR, at 53-54). He stated that migraines make him sick to his stomach, his vision blurs, and he has significant pressure in his head. (*Id.* at 54). He relayed that his normal migraines are a six on a one-to-ten scale, and he gets "really bad" migraines at least three to four times a month which last between two hours and all day. (*Id.* at 60-61). Plaintiff asserts he has to go into a darker room where it is cool and quiet, and sometimes he has to lay down and go to sleep to get the headache to pass. (*Id.*) Plaintiff testified that when he is having a bad migraine, he cannot watch his projector, he cannot drive, go to the sauna, help his wife cook meals, or work at his current part-time job. (*Id.* at 61-62).

The following testimony was elicited about his part-time job:

Q: How often have you had to call out, leave early or show up late since you started that job as a result of a headache specifically?

A: It has become an increasing issue to where I've had . . . to write emails or were calling ou[t] because of the headaches or I leave early. My work is noticing the difference. They're doing their best to adjust for my headaches but my quality of work is decreasing due to my headaches getting worse.

> Q: Roughly on average then, how often are we talking about that . . . happens in a typical week, month, year, just give me kind of a time period? How often are you having to leave early or call out?
>
> A: It's on average about two to three times a week most recently.
>
> Q: All right. And do they get you scheduled on a different day to accommodate you or what happens with it?
>
> A: If they're able to. If they need someone to fill in, they would call me to help out. But most of the time, I'm out hours of not being able to be scheduled due to the business at work. They don't have a lot of hours to give out currently.

(*Id.* at 63). Plaintiff also testified that he is now on prescription medication for his headaches, which take the form of monthly injections. (*Id.* at 53). He asserted he has been instructed to not take additional medication for his headaches. (*Id.* at 54).

After finding Plaintiff's headaches to be a severe impairment, (*id.* at 19), the ALJ addressed Plaintiff's migraines in conjunction with determining whether that impairment met or medically equaled a listing. (*Id.* at 21). The ALJ found: "the record reflects that [Plaintiff] has been seen intermittently only during the course of the period in question" and that Plaintiff's "headaches have occurred most frequently during periods of medication compliance." (*Id.*) Later, the ALJ noted Plaintiff's November 9, 2023, emergency room visit in which Plaintiff complained of a migraine headache. The ALJ wrote:

> Notes from the employment indicate that the headache had been ongoing for 4 days. [Plaintiff] was also hypertensive at the time, and hypertension was thought to be related to his headaches. [Plaintiff] admitted that he was out of his migraine headache medication which he usually took. [Plaintiff] was provided with medication via IV and discharged home after his symptoms subsided. While there a CT was performed of his head, but returned showing no significant abnormalities.

(*Id.* at 26) (internal citations omitted).

Addressing Plaintiff's subjective complaints related to all of his conditions combined, the ALJ concluded:

> Other than the relatively mild medical findings and medical opinions listed above, there is other evidence in the record that undermines the alleged severity of the claimant's impairments. The claimant is able to maintain a part time job, provide care for the family dogs, prepare meals, do laundry, take out the trash, perform general cleaning, drive a car, leave his home unaccompanied, go grocery shopping, manage finances, play video games, use a computer, perform video calls, follow TV shows/movies, handle stress, and follow both written and spoken instructions without difficulty. The claimant further has no difficulties with memory, paying attention, comprehension, using his hands, or getting along with others (including authority figures). Most importantly, the claimant has alleged extreme limitations such that he is unable to perform most day-to-day activities; however, this is inconsistent with the claimant's part-time job which he has maintained over the course of more than a year, a job that requires substantial standing as reported by the claimant.
>
> On the other hand, the claimant does have abnormal physical findings such as positive straight leg raise testing, occasional observation of a limping gait, and impingement syndrome, all of which justify a limitation to light exertion and the numerous postural limitations in this case. The claimant underwent right shoulder surgery and reports difficulty lifting this appendage over his head, and so restrictions were placed on his ability to do the same. As for the mental health limitations, the claimant's activities of daily living are robust and wide-ranging, so the limitations provided are the maximum possible if the claimant were still able to perform the activities described above.
>
> Thus, in terms of the claimant's degree of impairment, reducing the occupational base to the residual functional capacity described above accounts for any symptoms reasonably arising from this impairment. Further erosion of the occupational base is not warranted by the record.

(*Id.* at 28) (internal citation omitted)

### C.   The ALJ Erred in Considering Plaintiff's Daily Activities.

Plaintiff contests the ALJ's consideration of his daily activities in conjunction with

9

the symptom analysis. (Doc. 8, at 13-15). He contends the ALJ's improper consideration of his alleged symptoms is case-determinative because the migraine-related limitations would have affected his ability to perform work. (Doc. 8, at 7). The undersigned finds the ALJ committed reversible error by not properly considering Plaintiff's daily activities.

It is well established that an ALJ must demonstrate that he "considered all of the evidence" and must discuss not only the evidence supporting his decision, but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640-41 (10th Cir. 2018) (holding an ALJ may not "mischaracterize or downplay evidence to support [his] findings"). And "an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations." *Sitsler v. Astrue*, 410 F. App'x 112, 117 (10th Cir. 2011).

As part of his symptom analysis, the ALJ relied on Plaintiff's daily activities to justify the level of restrictions in the RFC. (AR, at 28). Specifically, the ALJ noted that Plaintiff had a part-time job, prepared meals, conducted other household chores, drove a car and ran errands, and used household electronics. (*Id.*) The ALJ highlighted Plaintiff's ability to work part-time, noting that such work was inconsistent with Plaintiff's "alleged extreme limitations." (*Id.*)

Despite focusing on Plaintiff's ability to work part-time, the ALJ did not discuss the alleged limitations on such work. The ALJ noted in multiple locations of the decision that Plaintiff has a part-time job, and that the job requires standing. (*Id.* at 27-28). He did not address Plaintiff's testimony that he has bad migraine headaches three-to-four times per

10

month which make him unable to work. (*Id.* at 63). The ALJ did not include any reference to Plaintiff's testimony that he has had to miss entire shifts or leave his part-time job early due to his headaches. (*Id.*) Indeed, the ALJ did not address that Plaintiff stated that he had to miss work two-to-three times per week near the time of the hearing due to his headaches. (*Id.*). The undersigned finds the ALJ's findings regarding the part-time job amounts to a mischaracterization of the evidence – while it is true Plaintiff does have a part-time job, he testified his ability to be present and perform that job is significantly limited to his migraine headaches. Plaintiff's ability to be present and perform at work is relevant because the VE found there would be "no jobs" for a hypothetical individual who would be absent or tardy more than one day per month. (*Id.* at 68-69).

For the reasons stated above, the ALJ erred in his consideration of Plaintiff's daily activities, and reversal is required on this basis because Plaintiff's alleged limitations would have been disabling if accepted by the ALJ. On remand, the ALJ should address Plaintiff's alleged limitations to his part-time work and consider them in conjunction with his analysis of Plaintiff's alleged symptoms.

### D.    The ALJ Did Not Properly Consider Plaintiff's Migraine-Related Medical Record.

Plaintiff argues that the ALJ's consideration of the medical record is deficient. He notes that while the ALJ summarized medical records, the only migraine-related records addressed were "the results of a cranial MRI and one ER visit." (Doc. 8, at 9). This, Plaintiff contends, ignored "the bulk of [his] migraine-related treatment, including primary care, urgent care, and neurology appointments." (*Id.*) For example, the ALJ did not

address a December 22, 2023, report from Dr. Timothy Rathbun. (AR, at 1620-28). The report notes Plaintiff's daily headaches and associated pain. (*Id.* at 1620). The Commissioner contends this report "established medication effectiveness, a fact the ALJ considered." (Doc. 14, at 4). But the medical record showed that Dr. Rathbun requested a trial of a new migraine medication, Lasmiditan. (AR, at 1628). So, the ALJ failed to consider evidence suggesting Plaintiff's medication was not working well – and such selective consideration of the record is not permitted. *See Clifton*, 79 F.3d at 1009-10. While this evidence is not dispositive of disability, the ALJ should have discussed it.

Further, while the Commissioner discounts some of the records for occurring before the alleged onset date, such evidence is still relevant for purposes of determining whether Plaintiff was disabled after the alleged onset date. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."); *Miller v. Comm'r, SSA*, 2024 WL 2844676, at *6 (10th Cir. June 5, 2024) ("A doctor's observations are relevant to the claimant's medical history and should be considered by the ALJ even if they pre-date her alleged disability period.") (citation modified). Thus the undersigned finds error in the consideration of the medical record as well.

## VI.   Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the Court

**REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

**SO ORDERED** this 20th day of August, 2025.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE